UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.  Case No. 8:23-cr-428-TPB-NHA

KAVAR YOUNG,

    Defendant.
_____/

### ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

This matter is before the Court on "Defendant's Motion to Suppress Evidence Illegally Obtained," filed by counsel on April 11, 2024. (Doc. 29). On April 25, 2024, the United States of America filed a response in opposition to the motion. (Doc. 32). After several continuances, including one requested by the defense (Docs. 33; 36), the Court held a bifurcated suppression hearing on July 25, 2024, and July 30, 2024. (Docs. 42; 44). After reviewing the motion, response, testimony, evidence, legal arguments, court file, and the record, the Court finds as follows:

### Background

This case arises from an October 22, 2023, traffic stop.[1] Tampa Police Officers Joseph Ramos, Dan Williams, and Jehryn Serrano observed a white Kia Rio driven by Defendant fail to come to a complete stop while exiting the parking lot area of a Shell gas station at 2924 N. 50th Street in Tampa, Florida.[2] Officers followed Defendant for a short distance before conducting a traffic stop at the

---

[1] Defendant alleges that the traffic stop at issue in this case occurred shortly after ShotSpotter detected "one round fired" and law enforcement officers canvassed the area.
[2] Officers Ramos and Serrano testified at the suppression hearing.

Rodeway Inn Hotel.  As the officers approached the vehicle, they observed Defendant lean forward in the vehicle as if trying to hide something underneath the front driver seat.  They could also smell the odor of marijuana emanating from the vehicle, and they observed Defendant with an empty firearm holster on his waist, which Defendant said he had just purchased.  Officers asked Defendant and his passenger about the presence of weapons, and the officers asked for Defendant's license.

After patting down Defendant while he was seated in the vehicle, the officers decided to remove Defendant from the vehicle.  According to Defendant, he complied with the officers' requests, voluntarily got out of the car, and did not resist.  According to the officers, Defendant failed to comply with their commands, pulling away and resisting detention – it took three law enforcement officers over four minutes to detain Defendant, and they ultimately had to deploy a taser to obtain Defendant's compliance.

Law enforcement officers searched the vehicle and recovered a loaded Glock 27 .40 caliber firearm, with one round in the chamber, from underneath the driver's seat.  Officers also searched Defendant's person and located two grams of marijuana.  At some point during this encounter, officers learned that Defendant was a convicted felon.  Defendant was charged in state court with felon in possession of a firearm, carrying a concealed firearm, and resisting an officer without violence.  Subsequently, on November 21, 2023, Defendant was indicted by a federal grand jury on one count of felon in possession of a firearm.

In his motion, Defendant challenges the legality of the traffic stop and of the subsequent searches and seizures. Most notably, Defendant argues that because Florida law did not require him to stop his vehicle at the intersection, there was no probable cause or reasonable suspicion for the officers to believe that he had committed a traffic infraction, rendering the initial stop unlawful. Defendant requests that the Court suppress all evidence derived from the search, including the firearm found in the vehicle.

## Legal Standard

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "[A] decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation occurred . . . and an officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment." *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999) (citing *Whren v. United States*, 517 U.S. 690, 699 (1996)).

## Analysis

### *Standing*

In his motion, Defendant asserts that he has standing to challenge the search and seizure as the driver of a borrowed vehicle. The Government argues that Defendant has not met his burden of proving a legitimate expectation of privacy in

the vehicle because he failed to present any facts or evidence to support his assertion.

The Eleventh Circuit has recognized that the driver of a borrowed vehicle has standing to challenge a search. *United States v. Miller*, 821 F.2d 546, 548 (11th Cir. 1987). At the suppression hearing, Defendant did not present any evidence, such as testimony, to establish that he was driving a borrowed vehicle with permission and therefore had a privacy right in that vehicle. But this was asserted in his motion, and the Government has also not introduced or alluded to any evidence that would establish the contrary. *See id.* (holding that the borrower of a vehicle had standing to challenge a search, and noting that the government did not introduce or allude to any evidence to contradict the defendant's assertion that he had permission from a friend to borrow the vehicle). For the purpose of ruling on the motion to suppress, the Court will assume that Defendant has standing to challenge the searches and seizures in this case.

### *Legality of Traffic Stop*

Even if Defendant could establish standing to challenge the legality of the stop, officers had reasonable suspicion to stop him.

In his motion, Defendant argues that law enforcement officers lacked the required reasonable suspicion or probable cause to stop him because the traffic stop in this case was purely pretextual. Defendant argues that the stop was performed by a team of undercover officers in raid vests who had just received information about shots fired in the area, and that Defendant was only stopped because the

officers hoped to find evidence of a greater offense. Even if that were true, the United States Supreme Court has held that the constitutional reasonableness of a traffic stop does not depend on the actual motivations of the individual officers involved. *Whren*, 517 U.S. at 813. By doing so, the Supreme Court has conclusively rejected the notion that ulterior motives or pretexts may invalidate police conduct that is justified based on probable cause. *Id.* at 811-12. The Court therefore does not further address this argument.

At the hearing, Defendant argued – for the first time – that the officers did not have any basis to stop him because he did not violate any Florida traffic laws.[3] Under Florida law, "[t]he driver of a vehicle emerging from an alley, building, private road or driveway within a business or residence district shall stop the vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across the alley, building entrance, road or driveway. . . ." *See* § 316.125, *F.S.* At least one Florida court – the Fifth District Court of Appeal – has carefully analyzed this law and concluded that "[p]roper consideration of this statutory provision and the plain and ordinary meaning of the words used reveal with clarity that drivers must stop before traversing a sidewalk or sidewalk area to enter an adjacent highway." *State v. Nelson*, 183 So. 3d 1074, 1077 (Fla. 5th DCA 2015).

---

[3] The Court notes that many Florida traffic laws have been cited in relation to these proceedings. For instance, the police officers originally indicated that Defendant failed to stop at a stop sign, a violation of § 316.074, *F.S.* (obedience to and required traffic control devices). At the suppression hearing, the parties discussed statutes pertaining to stopping at intersections at length, including § 316.125, *F.S.* (vehicle entering highway from private road or driveway or emerging from alley, driveway, or building) and § 316.121, *F.S.* (vehicles approaching or entering intersections).

Consequently, if the road that Defendant traveled upon was a private road or driveway, he was required to stop prior to entering the sidewalk area before the intersection. The Court finds the testimony of Officers Ramos and Serrano to be credible, including their testimony that they observed the vehicle fail to stop before entering the sidewalk area extending across the driveway.[4] No contrary physical evidence was produced at the hearing, and neither Defendant nor anyone else testified to the contrary. Therefore, if the road at issue was a private road, the officers had reasonable suspicion, if not probable cause, to stop Defendant based on the traffic infraction.

Defendant attempts to argue that this statute is inapplicable because the road that Defendant traveled upon was not an alley, private road, or driveway. Rather, Defendant characterizes the road as a public road because it crosses a public easement. But even if the road were a public road rather than a private road or driveway, the seizure would still be permissible if it was based on a reasonable factual or legal mistake. *See Heien v. North Carolina*, 574 U.S. 54, 57 (2014). After all, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Id.* at 60 (quoting *Riley v. California*, 573 U.S. 373, 381 (2014)). "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of

---

[4] The testimony concerning the stop sign was, at best, confusing. The Court notes that although the officers indicated they pulled Defendant over for failing to stop at a stop sign, the photographs of the scene did not depict a stop sign at that specific location. That being said, the Court does not find this issue bears much on the credibility of the officers, particularly because Defendant's argument is that he was not required to stop at the intersection *period*, with or without a stop sign.

government officials." *Id*. at 60-61.  As the United States Supreme Court has explained

> [R]easonable men make mistakes of law, too, and such mistakes are no less compatible with the concept of reasonable suspicion.  Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law.  The officer may be reasonably mistaken on either ground.  Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: The facts are outside the scope of the law.  There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law.

*Id*. at 61.

Here, the officers credibly testified that they believed Defendant had committed a traffic infraction when he left the gas station and turned onto the public highway by failing to stop before entering the sidewalk area before the intersection.  Having heard this credible testimony and reviewed photographs of the area, the Court finds that the officers' belief that Defendant violated the law was eminently reasonable, particularly in light of the fact that during this encounter, officers did not have the benefit of detailed property line records or a map of public versus private roadways to review.  And because the mistake of fact or law was reasonable, the officers possessed reasonable suspicion to justify the stop. Consequently, the Court finds that the initial traffic stop did not violate the Fourth Amendment.

*Legality of Searches and Seizures During Lawful Traffic Stop*

Defendant also challenges searches and seizures that occurred during and following the initial traffic stop. The Court finds that the searches and seizures are justified under various exceptions to the warrant requirement.[5]

Automobile Exception

In its response the Government contends that any warrantless searches and seizures were valid under the automobile exception to the warrant requirement. "The automobile exception allows the police to conduct a search of a vehicle if (1) the vehicle is readily mobile; and (2) the police have probable cause for the search." *United States v. Lindsay*, 482 F.3d 1285, 1293 (11th Cir. 2007). In this case, because the vehicle was operational and appeared to be capable of functioning, the vehicle was readily mobile. *See id.* As such, the first prong of the automobile exception is clearly satisfied.

For the automobile exception to apply, though, the police must also have probable cause to support the search. Probable cause exists when "under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle." *Id.* at 1293 (quotation omitted). In this case, the officers credibly testified to observations made during their encounter with

---

[5] Because the Court finds the automobile exception and the search incident to arrest exception justify the searches and seizures in this case, the Court does not address the Government's argument concerning the inevitable discovery doctrine based on the impounding of the vehicle.

Defendant that indicated the presence of an unsecured firearm in the vehicle.[6] Specifically, the officers testified that during their approach, they observed Defendant duck down, appearing to place an object underneath his seat. The officers also observed Defendant wearing an empty gun holster. Although Defendant claimed there were no weapons in the vehicle, officers did in fact locate a firearm underneath the driver's seat. It is well-established that officers may seize and secure even lawfully possessed firearms for officer safety reasons during traffic stops. *See United States v. Newsome*, 475 F.3d 1221, 1226 (11th Cir. 2007) (warrantless seizure of gun objectively reasonable under Fourth Amendment when there is real concern for safety of officer present or public at large).

Perhaps more significantly, the officers had probable cause to search the vehicle based on their observations of the odor of marijuana emanating from the vehicle. *See Merricks v. Adkisson*, 785 F.3d 553, 560 n.3 (11th Cir. 2015) (holding that smell of marijuana emanating from a vehicle provides sufficient probable cause to search the vehicle); *United States v. Hyppolite*, 609 F. App'x 597, 605 (11th Cir. 2015) (explaining that Eleventh Circuit has held the recognizable smell of marijuana gives rise to probable cause to support warrantless search); *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (en banc) ("There is no doubt that the agent's suspicions arose to the level of probable cause when, as the door stood open, he detected what he knew from his law enforcement experience to be the

---

[6] Florida Statute § 790.25(4)(a) provides that a person in lawful possession of a firearm may possess the firearm inside a vehicle only if the firearm is "securely encased or otherwise not readily accessible for immediate use."

odor of marijuana."). The Court notes that the officers did in fact locate marijuana on Defendant's person, and the initial arrest report reflects that possession of marijuana was one of the offenses for which Defendant was originally arrested.

Based on the officers' credible testimony, and viewing the facts and circumstances together, a reasonably prudent officer would believe that the vehicle contained evidence of contraband – either a firearm or narcotics. As such, the officers possessed reasonable suspicion and probable cause to search the vehicle pursuant to the automobile exception to the warrant requirement.

<u>Search Incident to Arrest</u>

The Government also contends that any warrantless searches were valid as searches incident to arrest, which provides another exception to the warrant requirement. When considering this exception, it is important to understand at what point in time Defendant was placed under arrest.

The Court initially notes that during the lawful traffic stop, law enforcement officers were entitled to order Defendant out of the vehicle without violating the Fourth Amendment. *See Maryland v. Wilson*, 519 U.S. 408, 410 (1997) ("[A] police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle."); *Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977) (holding that when motor vehicle is lawfully detained for a traffic violation, a police officer may order the driver to get out of the vehicle); *State v. Creller*, 386 So. 3d 487, 489 (Fla. 2024) ("It is well-settled that once a driver has been lawfully stopped for a traffic violation, police officers may order the driver out of the vehicle for officer safety

reasons without violating the Fourth Amendment's prohibition of unreasonable searches and seizures."); *State v. Benjamin*, 229 So. 3d 442, 444 (Fla. 5th DCA 2017) (holding that because the defendant was lawfully detained, the police officer could properly order the defendant to exit his vehicle even without a particularized basis to believe that the defendant was a threat to the officer's safety). Any challenge to Defendant's removal from the vehicle is therefore rejected.

At the time of his initial removal from the vehicle, it does not appear that Defendant was actually under arrest – he was only detained for officer safety and investigative purposes. However, once Defendant resisted the officers' attempts to detain him, he was arrested for resisting a law enforcement officer without violence (obstruction). Officers also had probable cause to arrest Defendant for marijuana offenses, as detailed above.

Upon Defendant's arrest, the officers would have surely searched him as an incident to the arrest. *See Riley v. California*, 573 U.S. at 386 (searches of a person incident to arrest, while based upon the need to disarm or discover evidence, are reasonable); *United States v. Robinson*, 414 U.S. 218, 226 (1973) (when an officer makes an arrest, it is responsible for arresting officer to search the person to remove weapons and seize evidence). Therefore, a search of Defendant's person was justified under the search incident to arrest exception.

In addition to searching the arrestee's person, officers may search the area within his immediate control under certain circumstances. *Arizona v. Gant*, 556 U.S. 332, 334 (2009). The Court notes that Defendant was secured at the time of

the vehicle search, so reaching into the vehicle for a weapon would not have been a concern of the officers.  However, the United States Supreme Court has concluded that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'"  *See id.* at 343.  This case originally began as a traffic infraction, and there would not appear to be a reasonable basis to believe the vehicle contained relevant evidence of the traffic infraction.  However, during the legal traffic stop, the officers developed probable cause to arrest Defendant for possession of marijuana, and it would be reasonable based on the officers' detection of the odor of marijuana to believe that the vehicle contained evidence related to that offense.  As such, the search of the vehicle is also permitted under the search incident to arrest exception to the warrant requirement.

## Conclusion

The Court concludes that the traffic stop did not violate the Fourth Amendment.  In addition, the subsequent searches and seizures of Defendant's person and vehicle did not violate the Fourth Amendment based on several exceptions to the warrant requirement.  The motion to suppress is denied.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 23rd day of October, 2024.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE